2004-NMCA-042

89 P.3d 80

**State of New Mexico, Plaintiff–Appellee,**

v.

**Kevin GEE, Defendant–Appellant.**

**consolidated with**

**State of New Mexico, Plaintiff–Appellee,**

v.

**Richard Ernest DeGurski, Defendant–Appellant.**

**No. 22937, 23345.**

Court of Appeals of New Mexico.

Feb. 18, 2004.

Certiorari Denied, No.28,543, March 31, 2004.

Patricia A. Madrid, Attorney General, M. Anne Kelly, Assistant Attorney General, Albuquerque, for Appellee in No. 22,937.

Patricia A. Madrid, Attorney General, Steven S. Suttle, Assistant Attorney General, Albuquerque, for Appellee in No. 23,345.

John B. Bigelow, Chief Public Defender, Jennifer Byrns, Assistant Appellate Defender, Santa Fe, for Appellants in Nos. 22,937 and 23,345.

## OPINION

WECHSLER, Chief Judge.

{1} We consolidate these appeals for opinion because they both raise issues of whether the district court committed fundamental error in giving the general intent jury instruction when a defendant is charged with a specific intent crime. Defendant Kevin Gee appeals his convictions for four counts of forgery. He argues on appeal that it was fundamental error for the district court to give both specific intent and general intent jury instructions when forgery is a specific intent crime. Gee additionally argues ineffective assistance of counsel. He contends that defense counsel was ineffective for allowing the jury to hear a highly prejudicial story of the attack on one of the victims. Defendant Richard Degurski appeals his convictions for larceny over $250.00 and receipt of stolen property. He contends on appeal that it was fundamental error for the district court to give the general intent instruction without instructing the jury that it did not apply to the specific intent crime. Because the instructions in each case substantially followed the applicable law, there was no fundamental error. We also conclude that Gee's counsel was not ineffective and therefore we affirm in both cases.

### Background in Gee's Appeal

{2} Gee was indicted for four counts of forgery for passing forged checks written on the account of John C. or Frances Strader. At trial, Mike Hindi the owner of the Mini Mart convenience store at which Gee passed the checks, testified that he cashed the checks when he normally would not have done so because he had known Gee for over 30 years. When Hindi asked Gee about the origin of the checks, Gee responded that he had received them as payment from John Strader for yard work. At some point, Hindi realized that the maker's endorsements on the checks appeared to match Gee's handwriting and he became suspicious. Hindi then called the Straders, and they informed him that their checkbook had been stolen a few days earlier in a purse snatching. Upon the prosecutor's inquiry during direct examination as to whether Hindi had a conversation with the Straders regarding a vehicle, Hindi testified that he thought Gee drove a vehicle similar to the one that was used during the purse snatching.

{3} After the conversation with the Straders, Hindi telephoned the police. He contacted Gee and informed him that the checks were stolen from the Straders during a purse snatching, and Defendant stated he "would take care of it." Gee began to make small cash installment payments to cover the bad checks.

{4} The Straders testified at trial that Frances Strader's purse had been stolen in Albuquerque two days prior to Gee's passing the first check. According to Frances Strader, the checkbook was in her purse, and the four checks in question were stolen from her. Neither of the Straders had seen Defendant before trial. John Strader testified that the maker's signatures on the checks did not belong to him or his wife, that they never wrote any checks to Defendant, and that he did not own any property in the Espanola area. The Straders provided handwriting samples as evidence for the jury's comparison. Defendant did not call witnesses.

### Background in Degurski's Appeal

{5} Degurski was charged with one count of larceny over $250.00 and one count of

receiving stolen property over $250.00 for having stolen and pawned a Snap–On air hammer valued between $250.00 and $300.00, belonging to Carl Hooten. At trial, Hooten testified that he and Degurski worked together at Goodyear as the only two mechanics during Hooten's tenure. When Hooten left Goodyear for another job, he left his air hammer at Goodyear because he did not have time to pick it up.

{6} When he had need for his air hammer at his new job, Hooten sent his wife, Shelley Hooten, to retrieve it from Goodyear. Shelley Hooten testified that she could not find the air hammer, so she asked Degurski about its whereabouts. Degurski responded that he had not seen the air hammer and did not have the time to help her look for it. A few months later, Hooten saw the air hammer for sale at a pawn shop. After going to the police, he was able to prove the air hammer was his and recover it. The owner of the pawn shop identified Degurski at trial as the person who pawned the air hammer, and Hooten testified that he had never given Degurski permission to pawn the air hammer.

*Erroneous Jury Instruction Claims*

{7} Both Gee and Degurski argue that when given together, the general intent and the specific intent instructions were inconsistent and confusing to the jury. They contend that general criminal intent is easier to prove than specific intent, and the general intent instruction enabled the jury to convict them of the specific intent crimes based on the general criminal intent of performing a purposeful act. There is, however, a difference in their positions. Gee faced only a specific intent crime. The general intent instruction was unnecessary in his case. Degurski, on the other hand, was defending a charge requiring only general intent, receiving stolen property, in addition to the specific intent charge of larceny. The general intent instruction was, therefore, necessary in Degurski's trial. Degurski contends that fundamental error occurred because the district court did not instruct the jury that the general intent instruction only applied to the receiving stolen property charge.

{8} Because neither Gee nor Degurski objected to the instructions given at trial, we review only for fundamental error. *State v. Cunningham,* 2000–NMSC–009, ¶ 8, 128 N.M. 711, 998 P.2d 176; *see also State v. Benally,* 2001–NMSC–033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (stating that when issue concerning jury instructions has not been preserved, review is for fundamental error). The doctrine of fundamental error only applies "for the protection of those whose innocence appears indisputabl[e], or open to such question that it would shock the conscience to permit the conviction to stand." *Cunningham,* 2000–NMSC–009, ¶ 13, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). We will reverse for fundamental error when the foundation or basis of a defendant's case or an essential right in a defense is affected. *Id.* When reviewing jury instructions for fundamental error, we apply the fundamental error standard of review to the same inquiry we perform for review for reversible error—whether the instruction or instructions would confuse or misdirect a reasonable juror due to contradiction, ambiguity, omission, or misstatement. *Benally,* 2001–NMSC–033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

{9} Based on *Lopez v. State,* 94 N.M. 341, 610 P.2d 745 (1980), and *State v. Gunzelman,* 85 N.M. 295, 512 P.2d 55 (1973), *overruled on other grounds by State v. Bender,* 91 N.M. 670, 671, 579 P.2d 796, 797 (1978), fundamental error did not occur in the cases on appeal. In *Lopez,* our Supreme Court examined the jury instruction for the specific intent crime of larceny given in connection with the general intent jury instruction. *Lopez,* 94 N.M. at 342, 610 P.2d at 746. The larceny instruction read:

For you to find the defendant guilty of larceny . . ., the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant took and carried away . . ., (describe property) belonging to another, (which had a market value over $ . . .);

2. At the time he took this property, the defendant intended to permanently deprive the owner of it;

3. This happened in New Mexico on or about the . . . day of . . . , 19 . . . . "

*Id.* (footnotes omitted). The general intent instruction read:

In addition to the other elements of . . . (identify crime or crimes) the state must prove to your satisfaction beyond a reasonable doubt that the defendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful. Whether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, [and] his conduct [and any statements made by him].

*Id.* (alteration in original). The Court affirmed the defendant's conviction, stating that the larceny statute and the general intent instruction, when read together, "correctly state the law applicable to larceny." *Id.*

{10} The defendant in *Gunzelman* was convicted of burglary. *Gunzelman,* 85 N.M. at 296, 512 P.2d at 56. The district court instructed the jury on burglary as follows:

The material allegations of the indictment necessary to be proven to your satisfaction and beyond a reasonable doubt before you can find the defendant guilty are that . . . [Gunzelman], did without authority or permission enter the dwelling house of [the victim], . . . with intent to commit a theft therein.

*Id.* at 300, 512 P.2d at 60. It also gave the following general intent instruction:

To constitute criminal intent it is not necessary that there should exist an intent to violate the law or to do a wrong. Criminal intent exists whenever a person intentionally does that which the law declares to be a crime, even though he may not know that he is committing a crime or that his act is wrong.

*Id.* The defendant did not object to these instructions. *Id.*

{11} Our Supreme Court held that the jury had been properly instructed because the burglary instruction followed the language of the burglary statute. *Id.* at 301, 512 P.2d at 61. It observed that the "instructions must be considered as a whole, and we have held that instructions are sufficient which substantially follow the language of the statute or use equivalent language." *Id.*

{12} The instructions given in both cases on appeal closely track the statutes for the crimes charged. Gee was charged with forgery. NMSA 1978, § 30–16–10 (1963) states:

Forgery consists of:

A. falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud; or

B. knowingly issuing or transferring a forged writing with intent to injure or defraud.

Whoever commits forgery is guilty of a third degree felony.

At trial, the district court gave the following jury instruction for the four counts of forgery:

For you to find the defendant guilty of forgery as charged in Count I, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant made up a false check . . ., drawn on the account of [the Straders] at [F]irst Security Bank, in the amount of . . . or made a false signature to said check;

2. At the time, the defendant intended to injure, deceive or cheat [the Straders] or [the] Mini Mart or another;

3. This happened in New Mexico on or about . . . .

OR

1. The defendant gave or delivered to [the] Mini Mart a false check . . ., drawn on the account of [the Straders] at [F]irst Security Bank, in the amount of . . ., knowing it to be a false check or to have a false signature, intending to injure, deceive or cheat [the Straders] or [the] Mini Mart or another[.]

The district court also gave this "general intent" instruction:

In addition to the elements of forgery, the state must prove to your satisfaction beyond a reasonable doubt that the defendant acted intentionally when he committed the crime charged. A person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful. Whether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, his conduct and any statements made by him.

■ {13} With regard to Degurski, the larceny (over $250.00) statute, NMSA 1978, § 30-16-1 (1987), states in pertinent part:

Larceny consists of the stealing of anything of value which belongs to another.

. . . .

Whoever commits larceny when the value of the property stolen is over two hundred fifty dollars ($250) but not more than two thousand five hundred dollars ($2,500) is guilty of a fourth degree felony.

The instructions given at trial for larceny stated:

For you to find the defendant guilty of larceny as charged in Count I, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant took and carried away a Snap-on brand Air Hammer with accessories, belonging to another, which had a market value over $250;

2. At the time he took this property, the defendant intended to permanently deprive the owner of it;

3. This happened in New Mexico on or about . . . .

The statute for receipt of stolen property over $250.00, NMSA 1978, § 30-16-11 (1987), states in pertinent part:

A. Receiving stolen property means intentionally to receive, retain or dispose of stolen property knowing that it has been stolen or believing it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner.

. . . .

F. Whoever commits receiving stolen property when the value of the property is over two hundred fifty dollars ($250) but not more than two thousand five hundred dollars ($2,500) is guilty of a fourth degree felony.

The instructions given at trial for the receiving stolen property charge read:

For you to find the defendant guilty of Receiving Stolen Property (disposing) as charged in Count II, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The Snap-On Air Hammer and accessories had been stolen;

2. The defendant disposed of this property;

3. At the time he disposed of this property, the defendant knew or believed that it had been stolen;

4. The property had a market value over $250;

5. This happened in New Mexico on or about . . . .

In addition, the following "general intent" instruction was given:

In addition to the other elements of the crimes charged, the State must prove to your satisfaction beyond a reasonable doubt that the Defendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime. Whether the Defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, his conduct, and any statements made by him.

{14} A comparison of the applicable statutes and the instructions given indicates that both juries were instructed that "substantially follow the language of the statute or use equivalent language." *Gunzelman*, 85 N.M. at 301, 512 P.2d at 61; *see also State v. Lucero*, 110 N.M. 50, 52, 791 P.2d 804, 806

(Ct.App.1990) ("Instructions are sufficient if, when considered as a whole, they fairly present the issues and the applicable law."). The instructions for both Defendants also informed the juries that they were to read the instructions as a whole.

{15} Following the instructions given, a reasonable juror could not have convicted either Defendant without a finding of specific intent. The specific intent required is set forth in each elements instruction. For forgery, it was necessary to find that Gee intended to injure, deceive, or cheat the Straders or the Mini Mart, and for larceny, that Degurski intended to deprive the owner of the air hammer. A finding that either Defendant acted purposefully in carrying out the required specific intent is not inconsistent with the specific intent instructions. *See, e.g., State v. Ruiz*, 94 N.M. 771, 779, 617 P.2d 160, 168 (Ct.App.1980) (stating that "[w]hen one intends to commit a felony or theft under the burglary statute one also has the general criminal intent of purposely doing an act even though he may not know the act is unlawful"). To find guilt based only on a purposeful act, as Defendants argue, a juror would have had to ignore the elements instruction as well as the instruction that the instructions be read as a whole. We cannot say that a reasonable juror would act in such a manner.

{16} The cases on appeal are not like *State v. Parish*, 118 N.M. 39, 878 P.2d 988 (1994) or *State v. Stampley*, 1999–NMSC–027, 127 N.M. 426, 982 P.2d 477, cited by Defendants. In *Parish*, the defendant raised the issue of self-defense. *Parish*, 118 N.M. at 42, 878 P.2d at 991. Our Supreme Court held that there was reversible error because the jury instructions failed to instruct on the unlawfulness of the defendant's acts as a necessary element of voluntary manslaughter based on the defendant's claim of self-defense and also failed to place the burden on the State to prove that the defendant did not act in self-defense. *Id.* at 42–45, 878 P.2d at 991–94. No such omission of an essential element or burden shifting occurred in the case of Gee or Degurski. The elements instructions properly set forth the required intent. Even with the general intent instruc-

tion, the instructions when read as a whole, did not deprive Defendants of an essential part of their defense. *See State v. Allen*, 2000–NMSC–002, ¶ 77, 128 N.M. 482, 994 P.2d 728 (stating that if a jury instruction is ambiguous, the jury instructions as a whole may cure the ambiguity).

{17} In *Stampley*, also a reversible error case, the defendant was convicted of first degree murder, attempted first degree murder, drug trafficking, and aggravated assault. *Stampley*, 1999–NMSC–027, ¶ 1, 127 N.M. 426, 982 P.2d 477. The State also initially charged the defendant with one count of "attempted first degree depraved mind murder" a crime that does not exist in New Mexico. *Id.* ¶ 45. The district court ultimately dismissed this count. *Id.* However, the record did not indicate that the jury was ever informed of the dismissal. *Id.* The Court did not submit instructions to the jury defining first degree murder, and therefore the jury had no alternative but to look to instructions that contained a definition for a crime that did not exist. *Id.* ¶¶ 47, 48. Our Supreme Court reversed the conviction because the jury could have convicted the defendant of a crime that did not exist, holding that the instructions given "were capable of at least two interpretations, one of which would have been erroneous." *Id.* ¶ 48. In both cases on appeal, under a fundamental error analysis, the instructions when considered as a whole would not lead a reasonable juror to believe that there was more than one proper interpretation.

{18} We also consider the committee commentary for UJI 14–141 NMRA 2003 to be of assistance. *See State v. McCrary*, 100 N.M. 671, 673, 675 P.2d 120, 122 (1984) ("The committee commentary is persuasive authority, although it is not binding on this Court."). The committee commentary specifically rejects Defendants' position that the general intent instruction is inconsistent with a specific intent instruction. It states:

The adoption of this mandatory instruction for all nonhomicide crimes requiring criminal intent supersedes cases holding that a general intent instruction is not required if the crime includes a specific intent. . . . The adoption of the instruction also super-

sedes dicta in [*Gunzelman* ] that a general criminal intent instruction is inconsistent with an instruction which contains the element of intent to do a further act or achieve a further consequence, the so-called specific intent element.

{19} Furthermore, even if the committee commentary mandated that the instruction not be given, a failure to follow a use note does not require automatic reversal, and would require preservation for review on appeal. *See State v. Doe*, 100 N.M. 481, 484, 672 P.2d 654, 657 (1983) (holding that "a defendant cannot sit back and insert error into a trial by his or her inaction and receive an automatic reversal when the crime has been fairly instructed on").

*Gee's Ineffective Assistance of Counsel Argument*

{20} Gee argues that his trial counsel was ineffective by allowing the jury to hear the "highly prejudicial" story of the attack on Frances Strader and the State's suggestion that Gee was responsible for the attack. We disagree.

{21} At trial, the jury heard testimony from the store owner Hindi that Gee drove a vehicle similar to that which was used during the purse snatching. Near the end of John Strader's direct examination, the State asked him whether he had discussed a vehicle when Hindi called regarding the checks. Strader responded that "a witness saw somebody run down the alley . . . and get in a black Jeep. . . . And then when [Hindi] called, he told me that [Gee] did have a black Jeep." Gee's counsel never objected to this testimony. The State then asked the following question:

> Q. Just to clarify, at the time that your wife's purse was snatched, you didn't see anybody?
>
> A. No. I was putting my walker in the car . . . and he grabbed her purse and jerked her down in some gravel and skinned her all up.

On cross-examination, defense counsel emphasized that Strader had not seen who snatched his wife's purse, nor had Strader himself seen any Jeep, black or otherwise.

{22} To justify ineffective assistance of counsel sufficient for a reversal, Defendant must show that: (1) counsel's performance fell below that of a reasonably competent attorney, and (2) Defendant was prejudiced by the deficient performance. *State v. Hester*, 1999–NMSC–020, ¶ 9, 127 N.M. 218, 979 P.2d 729. "Absent a showing of both incompetence and prejudice, counsel is presumed competent." *State v. Padilla*, 116 N.M. 448, 449, 863 P.2d 1069, 1070 (1993). Prejudice depends on whether "the allegedly incompetent representation prejudiced the case such that but for counsel's error, there is a reasonable probability that the result of the conviction proceedings would have been different." *State v. Baca*, 1997–NMSC–045, ¶ 20, 124 N.M. 55, 946 P.2d 1066.

{23} In this case, Gee's counsel did object on relevance grounds to the first mention of the attack on Frances Strader. The court overruled the objection. As a result, "[d]efense counsel could have reasonably concluded that any further objection would not have resulted in a different outcome." *State v. Nysus*, 2001–NMCA–102, ¶ 36, 131 N.M. 338, 35 P.3d 993. Our further review of the transcript reveals that defense counsel's strategy upon having his initial objection overruled could have been to disassociate Defendant from the purse snatching through cross-examination. We cannot say that this strategy was unsound given the circumstances, nor will we second guess counsel's strategy at trial. *See State v. Peters*, 1997–NMCA–084, ¶ 40, 123 N.M. 667, 944 P.2d 896 (stating whether to object to evidence is a matter of trial tactics and failure to object does not establish ineffective assistance); *see also Lytle v. Jordan*, 2001–NMSC–016, ¶ 43, 130 N.M. 198, 22 P.3d 666 ("On appeal, we will not second.guess the trial strategy and tactics of the defense counsel.") (internal quotation marks and citation omitted).

{24} Moreover, Gee has not established that the outcome of his trial would have been different but for ineffectiveness of counsel. *See Hester*, 1999–NMSC–020, ¶ 9, 127 N.M. 218, 979 P.2d 729. To the contrary, a review of the evidence at trial leaves little doubt of Gee's guilt. The State provided evidence that Gee passed forged checks be-

longing to the Straders at the Mini Mart, the Straders did not write any checks to Gee, and the Straders did not sign the four forged checks as maker. Intent may be inferred from circumstantial evidence. *See State v. Gattis,* 105 N.M. 194, 200, 730 P.2d 497, 503 (Ct.App.1986) (stating that an accused's intent can be inferred from the accused's acts, conduct, and words). While Gee did provide an "innocent" explanation as to where he obtained the checks, the jury was free to disregard that explanation. *See State v. Vigil,* 87 N.M. 345, 350, 533 P.2d 578, 583 (1975) (stating that a jury may disregard a particular version of events). Gee has failed to meet either prong of the test for ineffective assistance of counsel.

### Abandoned Arguments

{25} In their docketing statements, both Gee and Degurski raise the issue that there was insufficient evidence to support their convictions. In addition, Degurski also raises the issue that his defense counsel was ineffective for agreeing to allow an amendment of the criminal information which added the larceny count. These issues were not briefed and are deemed abandoned. *State v. Thomas,* 113 N.M. 298, 299, 825 P.2d 231, 232 (Ct.App.1991) (stating that issues not briefed are deemed abandoned).

### Conclusion

{26} The district courts in both cases did not commit fundamental error when they gave both "general intent" and "specific intent" instructions to the respective juries, and Gee's trial counsel was not ineffective as a matter of law. We affirm the convictions in both cases.

{27} IT IS SO ORDERED.

BUSTAMANTE and KENNEDY, JJ., concur.