2007-NMCA-152

172 P.3d 611

**STATE of New Mexico,
Plaintiff–Appellee,**

**v.**

**Jerry CARRASCO, Defendant–Appellant.**

**No. 25,669.**

Court of Appeals of New Mexico.

Oct. 3, 2007.

Certiorari Granted, No. 30,723,
Nov. 20, 2007.

Gary K. King, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant Jerry Carrasco appeals his conviction of attempted second degree murder. He argues that fundamental error occurred because the jury convicted him on the theory that he intended to cause an unintended result, resulting in his conviction of the legally inadequate charge of attempted second degree reckless, unintentional murder. We conclude that the instruction to the jury that Defendant must have intended to commit the crime of second degree murder to be guilty of attempted second degree murder enabled the jury to properly reach its verdict in this case. We therefore affirm.

## BACKGROUND

{2} On March 13, 2004, Defendant telephoned his ex-wife at her employment at a car dealership. She was busy. When he later came to the dealership, she was again busy and would not talk to him. He followed her inside, and she still would not talk to him. Someone at the dealership called the police, who arrived after Defendant had left. Later that day, when Defendant's ex-wife was driving home from work, she saw Defendant on the road as a passenger in a friend's car, a Nissan Maxima. She was driving a four-door Lincoln LS. She was stopped at a traffic light when the other car approached. Defendant got out of the Nissan and approached the passenger side of the Lincoln. Defendant's ex-wife testified that he wanted her to open the passenger door, but she would not. He went around to the driver's side, the light turned green, and she left.

{3} When Defendant's ex-wife next saw the Nissan, it was behind her on Texas Street. Defendant was driving. She saw the Nissan in her rear-view mirror. It hit the rear of her Lincoln three times. After the first time, Defendant's ex-wife dialed 9–1–1 on her cell phone. Defendant's ex-wife testified that the third time she was hit, she lost control of the car, went onto some gravel, and lost consciousness.

{4} A witness testified that he observed a Lincoln speed past him while he was stopped for a stop sign on Texas Street. He saw a Nissan behind the Lincoln push the Lincoln into a wall. The Lincoln hit the wall on its passenger side, rolled into the middle of the street, and came to a complete stop. At that time, the driver of the Nissan also came to a complete stop, turned around, drove around the witness's car at the stop sign, and accelerated into the driver's side of the Lincoln. The witness then observed the driver of the Nissan go to the Lincoln, open the passenger door, and flee the scene. The witness assisted Defendant's ex-wife, who, after the police were called, was transported to the hospital, where she remained for about two hours. She did not sustain any serious injury.

{5} Defendant testified that he loved his ex-wife, with whom he was reunited at the time of trial. He stated that he bumped the rear of the Lincoln so that his ex-wife would stop. He testified that he hit the Lincoln in order to tear up the car so that "we wouldn't have to mess with the car no more." He claimed that he did not try to kill her.

## ATTEMPTED SECOND DEGREE MURDER

{6} Second degree murder is the killing of a person, without sufficient provocation, lawful justification or excuse, and in

the absence of a sudden quarrel or the heat of passion, with the knowledge that one's acts created "a strong probability of death or great bodily harm" to the person killed or another. NMSA 1978, § 30–2–1(B) (1994); *see also* UJI 14–211 NMRA. It can be committed either intentionally or unintentionally. *See State v. Johnson*, 103 N.M. 364, 370, 707 P.2d 1174, 1180 (Ct.App.1985) (stating that the definition of second degree murder does not exclude intentional killing). Although it is generally considered a general intent crime, in limited circumstances it can be treated as a specific intent crime. *See State v. Jernigan*, 2006–NMSC–003, ¶ 18, 139 N.M. 1, 127 P.3d 537; *see also Johnson*, 103 N.M. at 370, 707 P.2d at 1180.

{7} Attempt to commit a felony is the commission of "an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." NMSA 1978, § 30–28–1 (1963). It is a specific intent crime. *Jernigan*, 2006–NMSC–003, ¶ 18, 139 N.M. 1, 127 P.3d 537. Attempted second degree murder, however, is not a valid crime in all circumstances because second degree murder can be committed either intentionally or unintentionally. *See Johnson*, 103 N.M. at 368–70, 707 P.2d at 1178–80. When second degree murder is committed as a general intent crime, it requires that the defendant kill the victim with the knowledge that the defendant's acts "create a strong probability of death or great bodily harm." Section 30–2–1(B). As a general intent crime, it does not require an intent to kill; a reckless killing satisfies the statutory requirements. Defendant contends that the prospect that the jury could have convicted him of attempted second degree murder without determining that he acted with an intent to kill requires reversal of his conviction. We agree with Defendant that if the jury could have found him guilty of attempted second degree murder without determining that he intended to kill his ex-wife, it could have convicted him of an attempt to commit reckless or unintentional second degree murder, a crime that does not exist.

## JURY INSTRUCTIONS ON ATTEMPTED SECOND DEGREE MURDER

{8} To determine whether the jury could have convicted Defendant of a legally inadequate crime, we look to the manner in which the district court instructed the jury. *See State v. Perea*, 1999–NMCA–138, ¶¶ 11–13, 128 N.M. 263, 992 P.2d 276 (examining jury instructions to determine whether the defendant could have been convicted "on a legally inadequate basis"). Defendant contends that the district court did not properly instruct the jury because it did not instruct that the jury had to find that Defendant intended to kill his ex-wife in order to return a guilty verdict on the attempted second degree murder charge. Because Defendant did not request such an instruction, we review for fundamental error. We conduct such review under a de novo standard. *State v. Marshall*, 2004–NMCA–104, ¶ 6, 136 N.M. 240, 96 P.3d 801. Fundamental error can result from an omission in jury instructions if the omission confuses or misdirects a reasonable juror. *State v. Gee*, 2004–NMCA–042, ¶ 8, 135 N.M. 408, 89 P.3d 80. Confusion that could cause a jury to convict a defendant of a legally inadequate crime constitutes fundamental error. *Perea*, 1999–NMCA–138, ¶ 13, 128 N.M. 263, 992 P.2d 276.

{9} The district court instructed the jury on attempted second degree murder using the uniform jury instructions as follows:

INSTRUCTION NO. 6

For you to find the defendant guilty of an attempt to commit the crime of second degree murder the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant intended to commit the crime of second degree murder;

2. The defendant began to do an act which constituted a substantial part of second degree murder but failed to commit second degree murder;

3. This happened in New Mexico on or about the 13th day of March, 2004.

INSTRUCTION NO. 7

In New Mexico, the elements of the crime of second degree murder are as follows:

1. The defendant killed Rebecca Carrasco;

2. The defendant knew that his acts created a strong probability of death or great bodily harm to Rebecca Carrasco[.]

{10} Under the facts of this case, we do not believe that the jury could have been confused to the point of fundamental error based on these instructions. Instruction No. 6 required the jury to find that Defendant intended to commit the crime of second degree murder in order to return a guilty verdict. Under Instruction No. 7, the district court instructed the jury on the elements of second degree murder. Thus, the jury was required to address the elements of second degree murder and determine whether Defendant intended to commit them. The first element listed in Instruction No. 7 is that "[t]he defendant killed" his ex-wife. Although it would not have been necessary for the jury to find that Defendant intended to kill his ex-wife to convict him of second degree murder, Instruction Nos. 6 and 7, when read together, required such a finding to convict him of the attempt charge. Because Defendant had to intend to commit the crime of second degree murder, he had to intend to kill his ex-wife in order to be convicted of the attempt. The second element of second degree murder in Instruction No. 7 concerns Defendant's knowledge of the consequences of his acts. Thus, when we read Instruction Nos. 6 and 7 together, the jury could have found Defendant guilty of the attempt charge only if he intended to kill his ex-wife, acted with the requisite knowledge, and began to do the acts, but failed to commit the crime. The basis for the attempt charge, and the reason he would have failed to complete the crime, is that he failed to kill his ex-wife.

{11} Defendant makes various arguments to undermine the effect of these instructions. In his brief in chief, Defendant contends that at trial the State relied exclusively on a theory of an attempt to commit reckless unintentional murder.

{12} In closing, the prosecutor argued specifically that Defendant "attempted to kill his ex-wife. He failed in the commission, but he intended to commit that act, and I would ask you to find him guilty of that crime." Defense counsel, in closing, characterized the State's argument.

> This case is a simple question. What was in that man's mind right there? What was he—what was in his mind? [The State] want[s] you to bite the apple that he was intending to kill Rebecca Carrasco. That's the issue. He was intending to take this woman's life on that night. That was his intent.

Defense counsel argued that Defendant did not intend to kill his ex-wife. In rebuttal, the prosecutor restated Defendant's acts and again argued, "What does he intend? Intends to kill her. That's what he tried to do, and he missed."

{13} Although the State was seeking to convict Defendant of alternative charges of attempted first degree and second degree murder, it consistently maintained to the jury that Defendant intended to kill his ex-wife, regardless of the charge it discussed. As Defendant indicates, the prosecutor specifically asked the jury in closing "to take a careful look at the jury instructions. Make certain you understand them." But we do not read into this argument, as Defendant suggests, that the jury could convict Defendant without finding an intent to kill. Nor do we believe that the prosecutor's argument to the district court out of the jury's presence in response to Defendant's motion for directed verdict indicates jury confusion. At no time did the prosecutor argue, or intimate, to the jury that the jury could convict Defendant of attempted second degree murder based on a reckless or unintentional standard.

{14} In his reply brief, Defendant points to the difference in the intent requirements of first and second degree murder to contend that the State never distinguished between the deliberate intent required for first degree and the specific intent required for second degree. However, the jury instruction explaining the elements of first degree murder, in conformance with the uniform jury instructions, specifically addresses this distinction. UJI 14–201 NMRA. The prosecutor did not have a particular responsibility to explain the distinction in closing.

**66**

{15} We lastly address Defendant's reliance on *State v. Hernandez,* 1998–NMCA–167, 126 N.M. 377, 970 P.2d 149. In *Hernandez,* we reversed convictions of attempted first degree murder and remanded for a new trial. *Id.* ¶ 20. We noted that, on remand, a conviction could not be sustained if it were based only on a finding that the defendant "knew that his acts created a strong probability of death or great bodily harm." *Id.* ¶ 16 (internal quotation marks and citation omitted). We stated that a modification of the UJI for second degree murder would be necessary to state the requirement of specific intent. *Id.* In that dicta, we sought to give guidance to the district court for a new trial. We were not, as we are in this case, reviewing a conviction after a jury verdict for fundamental error. Indeed, the district court in this case could have given an instruction as contemplated in *Hernandez.* If such an instruction had been requested and denied, we would be viewing this case under a different standard. However, under fundamental error review, we conclude that the jury instructions adequately informed the jury of the issue of intent before it. We believe that, given the way in which the issue was framed in this case, a reasonable juror could have followed the jury instructions and would not have been confused or misdirected as to the instructions. *See Gee,* 2004–NMCA–042, ¶ 8, 135 N.M. 408, 89 P.3d 80.

## CONCLUSION

{16} We affirm the judgment and sentence of the district court.

{17} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and IRA ROBINSON, Judges.