The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: April 7, 2025

**NO. S-1-SC-39553**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**OFFICE OF THE PUBLIC DEFENDER ON BEHALF OF NATHANIEL YAZZIE, DECEASED,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Karen L. Townsend, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Meryl E. Francolini, Assistant Solicitor General
Santa Fe, NM

for Respondent

**OPINION**

**ZAMORA, Justice.**

{1}    The fundamental question presented by this appeal is whether the attempt to cause or permit reckless child abuse is a crime under New Mexico law. We first address whether the issue is moot and whether Defendant Nathaniel Yazzie's no contest plea bars consideration of this question. We also address as a preliminary matter whether a person can plead guilty or no contest to a nonexistent crime.

{2}    We conclude that (1) the issue is not moot and a nonwaivable jurisdictional question is raised when a defendant pleads guilty or no contest to a nonexistent crime, (2) one cannot enter into a plea agreement for a nonexistent crime, and (3) attempt to cause or permit reckless child abuse is a nonexistent crime. Accordingly, we vacate Defendant's conviction. Because Defendant died during the pendency of this appeal, we remand to the district court for dismissal of this case.

## I.    BACKGROUND

{3}    This case began when law enforcement conducted a welfare check at Defendant's apartment after his downstairs neighbor "reported a loud 'thumping' sound coming from the apartment above." *State v. Yazzie* (*Yazzie I*), 2019-NMSC-008, ¶ 5, 437 P.3d 182. The only response to the police officer's knocking on the door was an infant crying continuously and a young child hollering, "'Mommy!

Mommy, wake up!'" *Id.* When the officer entered Defendant's apartment, he found two children under six and an infant in a room in which Defendant and an adult woman were lying on the floor, passed out. *Id.* ¶¶ 6, 9. The officer also saw empty alcohol bottles lying on top of an open trash can. *Id.* ¶ 8. Defendant and the other adult were the children's father and mother. Defendant and the children's mother were difficult to rouse, appeared heavily intoxicated, and exhibited heavily slurred speech and difficulty answering basic questions. Portable breath tests indicated both adults were extremely intoxicated. The children were picked up and released into the custody of their grandmother. Defendant and the children's mother were arrested, transported to jail, and booked for child abuse.

{4} Defendant was charged with one count of "Child Abuse – Negligently Cause (No Death or Great Bodily Harm)," contrary to NMSA 1978, Section 30-6-1(D) (2009). The criminal information was devoid of any basis for the charge other than criminal negligence. Defendant subsequently entered a conditional no contest plea to "Attempt to Commit a Felony, to wit: Child Abuse – Negligently Permit (No Death or Great Bodily Harm), a fourth degree felony," contrary to Section 30-6-1(D). In his plea agreement, Defendant reserved his right to appeal the district court's denial of his motion to suppress. After sentencing, Defendant appealed.

2

{5} The Court of Appeals reversed Defendant's conviction holding that the district court erred in denying Defendant's motion to suppress. The Court of Appeals did not reach the additional arguments Defendant advanced on appeal. *State v. Yazzie*, A-1-CA-34537, mem. op. ¶¶ 15, 16 (N.M. Ct. App. May 11, 2017) (nonprecedential). We reversed the Court of Appeals and held the district court properly denied Defendant's motion to suppress. *Yazzie I*, 2019-NMSC-008, ¶¶ 12, 52. We remanded the case with instructions to the Court of Appeals to determine any remaining issues it had not reached because of its reversal on the suppression motion. *Id.* ¶ 52. Those remaining issues were Defendant's assertion that attempt to commit negligent child abuse is a nonexistent crime and that it was fundamental error to allow him to plead to a nonexistent offense.

{6} While the case was pending before the Court of Appeals on remand, Defendant passed away, and Defendant's appellate counsel filed a Suggestion of Death and Motion to Abate or Appoint Substitute Party. The Court of Appeals transferred that motion to this Court on the grounds that its own authority did not include abatement of the proceedings required under *Yazzie I*. We refused the transfer and directed the Court of Appeals to appoint a substitute party under Rule 12-301 NMRA and to hold further proceedings consistent with our mandate in

3

*Yazzie I*. The Court of Appeals appointed the Office of the Public Defender to substitute for Defendant and pursue this appeal on his behalf.

{7}     The Court of Appeals acknowledged Defendant's challenge to the validity of his no contest plea by asserting that an attempt to negligently permit child abuse is a nonexistent crime and as such was invalid. *State v. Off. of Pub. Def. ex rel. Yazzie* (*OPD ex rel. Yazzie*), A-1-CA-34537, dec. ¶ 2 (N.M. Ct. App. Aug. 16, 2022) (nonprecedential). But the Court concluded it was barred from considering this remaining challenge because Defendant's plea agreement expressly reserved only the right to appeal his motion to suppress. *Id.* ¶ 5. We granted Defendant's petition for certiorari.

{8}     We turn now to two of the three questions presented which are (1) whether attempted negligent child abuse is a crime under New Mexico law and (2) whether a person can plead guilty to a nonexistent offense in New Mexico. Given our resolution of these questions, we need not address the third question presented, which assumed in the alternative that one could plead no contest or guilty to a nonexistent offense.

4

## II.   DISCUSSION

### A.   Mootness and Jurisdiction

{9}   Before we address Defendant's claim that attempted negligent child abuse is a non-existent crime, we must first determine whether Defendant's claim is moot and whether we have jurisdiction to consider that claim.

### 1.   Defendant's claim is moot, but it raises a question of substantial public interest

{10}   The State asserts this case is moot because Defendant passed away and is no longer subject to the terms of the plea agreement, and therefore there is no actual controversy and no possibility of "real-world relief." As a general rule, we do not decide cases where "no actual controversy exists and [we] cannot grant actual relief." *Gunaji v. Macias*, 2001-NMSC-028, ¶ 9, 130 N.M. 734, 31 P.3d 1008 (internal quotation marks and citation omitted). However, there are two exceptions to this rule. We exercise our discretion to hear a moot case when it presents an issue of substantial public interest or when the issue is capable of repetition yet has evaded review. *Id.* ¶ 10; *Republican Party of N.M. v. N.M. Tax'n & Revenue Dep't*, 2012-NMSC-026, ¶ 10, 283 P.3d 853. Because this case presents issues of substantial public interest, we need not determine whether the second exception applies.

{11}   Issues of substantial public interest include issues of fundamental rights and the constitutional rights of criminal defendants. *See Republican Party*, 2012-NMSC-

026, ¶ 10 ("A case presents an issue of substantial public interest if it . . . affects a fundamental right such as voting."); *State v. Wheeler*, S-1-SC-37709, dec. ¶¶ 9, 13-14 (N.M. June 10, 2021) (nonprecedential) (holding that the due process right to confront and cross-examine witnesses at a parole revocation hearing presents a matter of substantial public interest). Defendant contends that his claim implicates an important separation of powers concern. He contends that the district court's agreement to accept a guilty plea for a crime that has not been established by the Legislature usurps the Legislature's authority to prescribe criminal punishments. *See State v. Cates*, 2023-NMSC-001, ¶ 13, 523 P.3d 570 ("Th[e] limitation on judicial authority [to impose a sentence] reflects the separation of powers notion that it is solely within the province of the Legislature to establish penalties for criminal behavior." (internal quotation marks and citation omitted)). We conclude this case raises issues of substantial public interest that need to be addressed to establish whether the State may lawfully charge someone with attempt to commit negligent child abuse, whether such a charge may form the basis for a conviction by plea or by jury trial, and whether such a charge can be properly characterized as a lesser-included offense.

{12} For the reasons stated above, we conclude that Defendant's appeal is moot; however, we elect to exercise our discretion to review the case as it presents an issue of substantial public interest. *Gunaji*, 2001-NMSC-028, ¶¶ 9-10.

**2.    A plea to a nonexistent crime raises a nonwaivable jurisdictional question that can be raised for the first time on appeal**

{13} We next consider whether we have jurisdiction to decide Defendant's appeal. Defendant contends that he pled to a nonexistent crime and his plea presents a nonwaivable jurisdictional question that can be challenged on appeal in the first instance. In the plea agreement, Defendant expressly reserved only his right to appeal the denial of his motion to suppress. He did not reserve a challenge to the validity of his conviction on the grounds he pled to a nonexistent crime. Nonetheless, he raised the issue in his first appeal to the Court of Appeals.

{14} On remand after our opinion in *Yazzie I*, the Court of Appeals pointed out that Defendant failed to reserve in his plea agreement the right to appeal any issue other than his suppression motion. It observed that voluntary guilty pleas generally result in waiver of any other objection to defects in the proceedings as well as waiver of statutory or constitutional rights, including the right to appeal. *OPD ex rel. Yazzie*, A-1-CA-34537, dec. ¶ 3. The Court of Appeals recognized that a plea agreement cannot waive a jurisdictional error, *id.*, but assumed without discussion that the plea did not implicate any jurisdictional concerns. It then concluded the terms of

7

Defendant's plea agreement barred it from considering Defendant's challenge to the validity of his plea on the grounds that he pled to a nonexistent crime. *Id.* ¶¶ 2-3, 5. Because we conclude Defendant's challenge raises a jurisdictional error, his plea agreement is not a bar to the issues he raises, which can be raised in the first instance on appeal.

{15} To date, our appellate courts have not had the opportunity to consider the validity of a criminal defendant's plea to a nonexistent crime. This Court has, however, had the opportunity to consider a similar issue—the efficacy of a district court's sentence imposed absent statutory authority. In *State v. Trujillo*, this Court reasoned that "[a] trial court's power to sentence is derived exclusively from statute." 2007-NMSC-017, ¶ 10, 141 N.M. 451, 157 P.3d 16 (internal quotation marks and citation omitted). If the district court was not statutorily or constitutionally permitted to sentence the defendant in the manner he was sentenced, then his sentence is illegal. *See id.* ¶ 9. *Trujillo* explained that a defendant's plea to an illegal sentence rises to the level of a jurisdictional defect. *Id.* ¶ 8. And, a defendant who pleads guilty "does not waive jurisdictional errors." *Id.*

{16} Relying on these principles, Defendant asks us to extend this reasoning to pleas to nonexistent crimes and expressly recognize that a defendant's entry into a plea to a nonexistent crime is jurisdictionally infirm and of no force and effect. We

agree that should our district courts accept pleas to nonexistent crimes without statutory authority, they do so without subject matter jurisdiction and in violation of well-established notions of separation of powers. *Cates*, 2023-NMSC-001, ¶ 13; *see also Trujillo*, 2007-NMSC-017, ¶ 8. We hold that a district court's acceptance of a guilty or no contest plea to a nonexistent crime is a jurisdictional error that cannot be waived by a plea agreement and can be raised for the first time on appeal.[1]

**B.     Attempt to Cause or Permit Reckless Child Abuse Is a Nonexistent Crime**

{17}     We turn our analysis to whether Defendant pled to the nonexistent crime of negligent child abuse. To determine whether Defendant pled to a nonexistent crime, we are again called upon to review the meaning of the language in our child abuse statute. This is a question of law which is subject to de novo review. *Cooper v.*

---

[1]Numerous other jurisdictions have also concluded that a plea to a nonexistent crime constitutes a nonwaivable jurisdictional defect. *See, e.g.*, *State v. Cvorovic*, 462 N.W.2d 897, 898 (Wis. Ct. App. 1990) (holding that the trial court lacked subject matter jurisdiction over the nonexistent offense of attempted fourth degree sexual assault); *Whitner v. State*, 492 S.E.2d 777, 779 (S.C. 1997) (reasoning that trial courts lack subject matter jurisdiction to accept guilty pleas to nonexistent offenses); *People v. Lopez*, 846 N.Y.S.2d 164, 165 (N.Y. App. Div. 2007) (treating a plea to a nonexistent crime as a "jurisdictional defect rendering the plea a nullity"); *State v. Crosby*, 338 So. 2d 584, 588 (La. 1976) (recognizing that the defendant's entry into an unconditional guilty plea does not waive jurisdictional defects, which include situations where the charged offense "does not constitute a crime"); *People v. Hammond*, 466 N.W.2d 335, 339 (Mich. Ct. App. 1991) (explaining that because "the state never had a legitimate interest in securing a conviction" for "a nonexistent criminal offense," the defendant maintained the right to "appeal and allege the illegality of his plea-based conviction of a nonexistent offense").

*Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61; *see also State v. Gray*, 2016-NMCA-095, ¶¶ 3, 12, 384 P.3d 1083 (conducting de novo review of whether a defendant pled guilty to a nonexistent crime).

{18} Two criminal statutes guide our analysis. The first criminalizes attempts to commit a felony. NMSA 1978, § 30-28-1 (1963, amended 2024).[2] The second criminalizes child abuse when a defendant acts knowingly, intentionally, or negligently. Section 30-6-1(D). The crime of negligent child abuse is more accurately referred to as reckless child abuse. *State v. Consaul*, 2014-NMSC-030, ¶ 37, 332 P.3d 850; *see also* § 30-6-1(A)(3) (defining *negligently* as acting "with a *reckless disregard* for the safety or health of the child" (emphasis added)). Because this case involves an attempt to commit reckless child abuse, we begin by considering the interplay between the specific- and general-intent theories of mens rea that we have applied to attempt crimes and the particular mens rea terms used in the child abuse statute to define that offense.

**1.    One cannot attempt to commit a felony that lacks specific intent**

{19} In relevant part, our attempt statute provides, "Attempt to commit a felony consists of an overt act in furtherance of and *with intent to commit a felony* and

---

[2]Because the 2024 amendments to the 1963 attempt statute did not change the relevant language, further references to this statute are to the current version.

tending but failing to effect its commission." Section 30-28-1 (emphasis added). Attempt to commit a felony is an inchoate crime because the crime is not completed. *State v. Green*, 1993-NMSC-056, ¶ 21, 116 N.M. 273, 861 P.2d 954. Inchoate crimes are those in which a person has taken a "step toward the commission of another crime, the step in itself being serious enough to merit punishment." *Inchoate Offense*, *Black's Law Dictionary* (12th ed. 2024) ("The three inchoate offenses are attempt, conspiracy, and solicitation.").

{20} When assessing the mens rea for attempt crimes, we have relied on the distinction made at common law between specific intent crimes and general intent crimes. *See United States v. Bailey*, 444 U.S. 394, 403 (1980) (noting that mens rea often has been determined by reference to the common law classifications of "'general intent' or 'specific intent'"); *accord State v. Granillo*, 2016-NMCA-094, ¶ 15, 384 P.3d 1121 (referring to specific intent and general intent as "the traditional dichotomy"). The mens rea for a specific intent crime is established when "a statute expressly requires proof of intent to do a further act or achieve a further consequence." *State v. Brown*, 1996-NMSC-073, ¶ 22, 122 N.M. 724, 931 P.2d 69 (internal quotation marks and citation omitted); *State v. Johnson*, 1985-NMCA-074, ¶ 13, 103 N.M. 364, 707 P.2d 1174. A specific intent crime "concerns itself with the state of mind of the perpetrator." *Johnson*, 1985-NMCA-074, ¶ 13.

{21} In contrast to specific intent crimes, general intent crimes do not concern a perpetrator's state of mind as their commission does not hinge on a perpetrator's subjective intent to do a further act or achieve a further consequence. *Brown*, 1996-NMSC-073, ¶ 22. A general intent crime requires only "conscious wrongdoing" or "the purposeful doing of an act that the law declares to be a crime." *Id.* (internal quotation marks and citation omitted). A defendant without an intent to commit a criminal act can be convicted of a general intent crime because general intent crimes do not rely on a defendant's subjective intent or knowledge. *Id.* ¶ 27 (explaining that when proof of subjective knowledge is required, an offense cannot be considered a general intent crime).

{22} Attempt is a specific intent crime because the statute requires that an individual intend to commit a particular felony. *Green*, 1993-NMSC-056, ¶ 21; *State v. Carrasco*, 2007-NMCA-152, ¶ 7, 143 N.M. 62, 172 P.3d 611; *Johnson*, 1985-NMCA-074, ¶ 10. The felony underlying an attempt charge must also be a specific intent crime. *See Johnson*, 1985-NMCA-074, ¶¶ 11-14 (reversing convictions for attempted depraved mind murder because the crime of attempt cannot be predicated on felonies which lack an element of subjective intent).

{23} Agreeing with the *Johnson* Court and finding caselaw from other jurisdictions persuasive, we held in *State v. Jernigan* that when the mental state of the crime

alleged to have been attempted differs from the mental state found in the attempt statute—as when the attempted offense is not itself a specific intent crime—there is an irreconcilable discrepancy. 2006-NMSC-003, ¶¶ 17, 18, 139 N.M. 1, 127 P.3d 537. Simply put, if the underlying felony is a specific intent crime, it can be attempted. *Id.* ¶ 18 (holding that in limited circumstances, voluntary manslaughter is a specific intent crime which can support the giving of a jury instruction for attempt to commit voluntary manslaughter). But if the underlying felony does not require any subjective intent, it is a general intent crime and cannot be the subject of an attempt charge. *Id.* ("[I]t is illogical to apply attempt, a specific intent crime, to a general intent crime."). Accordingly, to determine whether an attempt charge is valid, we look to whether the felony underlying that charge is a specific intent crime. *Id.* ¶¶ 17, 18. Here, we look to the crime of reckless child abuse.

{24}    While this is our first opportunity to consider whether reckless child abuse is a specific intent crime, our appellate caselaw consistently rejects characterizing reckless conduct crimes as specific intent crimes. In *State v. Baca*, we reversed the defendant's conviction for conspiracy to commit depraved mind murder because it was a nonexistent crime. 1997-NMSC-059, ¶¶ 2, 51, 124 N.M. 333, 950 P.2d 776. Observing that conspiracy and attempt are "paradigmatic specific intent offenses," we agreed with the defendant that conspiracy, like attempt, is a specific intent crime

13

which requires the defendant to also intend to commit the crime which is the object of the conspiracy. *Id.* ¶ 51 (internal quotation marks and citation omitted). We then held that depraved mind murder is a general intent crime because the killing needs *only* to result from highly reckless behavior of the accused. *Id.* Thus, one cannot conspire to commit depraved mind murder since that crime results from highly reckless behavior and does not require the subjective intent to kill.

{25} The Court of Appeals also recognized that reckless conduct crimes are not specific intent crimes. *Johnson* aptly explained that a specific intent crime "concerns itself with the state of the mind of the perpetrator" while a crime committed with "outrageous recklessness," such as depraved mind murder, is committed irrespective of a defendant's subjective intent. 1985-NMCA-074, ¶¶ 11, 13. This led the Court to hold that "the crime of attempted depraved mind murder . . . does not exist" and to reverse the defendant's convictions for that nonexistent offense. *Id.* ¶ 14; *accord Carrasco*, 2007-NMCA-152, ¶ 7 (stating that an attempt to commit a general intent crime is "a crime that does not exist"); *State v. Herrera*, 2001-NMCA-073, ¶ 13, 131 N.M. 22, 33 P.3d 22 (acknowledging that one cannot attempt to commit a felony requiring only reckless disregard).

{26} Therefore, it is well established that one cannot attempt to commit a reckless conduct crime where the requisite mental state lacks an element of specific intent.

14

*See also* 1 Jens David Ohlin, *Wharton's Criminal Law* § 7:4, at 186 (16th ed. 2021) ("[T]here can be no attempt to commit a crime the gravamen of which is 'negligent' or 'reckless' conduct."). We therefore turn to the mens rea required for reckless child abuse to determine whether it, too, is a reckless conduct crime which lacks a specific intent element.

**2.     The mens rea for reckless child abuse does not require a specific intent**

{27}     Our child abuse statute lists the three mens rea, or mental states, that support criminal liability: "knowingly, intentionally or negligently." Section 30-6-1(D). To determine whether there is a subjective intent component to reckless child abuse, we directly analyze the meaning of *negligently*. *See Consaul*, 2014-NMSC-030, ¶¶ 27-40 (analyzing the meaning of *negligently* committing child abuse in the context of our uniform jury instructions).

{28}     To be convicted of reckless child abuse, a defendant must act "with a reckless disregard for the safety or health of the child." Section 30-6-1(A)(3); *see also State v. Taylor* (*Taylor II*), 2024-NMSC-011, ¶ 25, 548 P.3d 82. We have confirmed that "the reckless element of child abuse in New Mexico is properly evaluated under an objective test." *Taylor II*, 2024-NMSC-011, ¶ 24. Because the test is objective, a defendant's subjective state of mind is not at issue and the defendant's intent is not relevant. *Id.* ¶ 26 (requiring no subjective knowledge). Thus, reckless child abuse is

15

appropriately characterized as a general intent crime since there is no subjective intent component to the mens rea of reckless disregard. Because one can only attempt a specific intent crime, we hold that in pleading no contest to attempt to permit reckless child abuse, Defendant pled to a nonexistent crime.

{29} To hold otherwise would countenance conviction for an alleged crime which is multiple steps removed from any showing of a subjective specific intent. Our attempt statute punishes behavior that does not actually result in a completed crime. This is justified when the underlying felony offense is a specific intent crime, as it limits criminal punishment to instances where a defendant actually intends or desires—but fails—to commit a crime. *See* 1 Ohlin, *supra*, § 7:7, at 215 (remarking that in all jurisdictions, "attempt liability . . . requires . . . that the result intended or desired by the actor constitute a crime"). But criminal liability for attempt is *not* justified when the underlying felony offense does not require any subjective intent on the part of the defendant.

{30} The State describes the criminal information as "charging Defendant with child abuse by way of negligently causing his three children to be placed in a situation that, *in part, may have endangered* their life or health contrary to . . . [Section] 30-6-1(D)." (Emphasis added.) This is child abuse by endangerment, a special class of child abuse which punishes "conduct expos[ing] a child to a

16

significant risk of harm, even though the child . . . suffer[s no] physical injury." *State v. Chavez*, 2009-NMSC-035, ¶ 15, 146 N.M. 434, 211 P.3d 891 (emphasis omitted) (internal quotation marks and citation omitted); § 30-6-1(D)(1), (E). Thus, the underlying crime Defendant allegedly attempted—child abuse by endangerment—already punishes conduct that is merely a step towards an incomplete result. Defendant's children suffered no harm, so charging Defendant with attempt to commit child endangerment creates a second level of inchoate conduct.

{31} Yet a third level of attenuation is added by Defendant having pled no contest to attempt to *permit* negligent child abuse. "[C]*ausing* and *permitting* child abuse are distinct theories" of criminal culpability. *State v. Nichols*, 2016-NMSC-001, ¶ 32, 363 P.3d 1187 (emphasis added) (internal quotation marks omitted). Causing child abuse is premised on active abuse. *Id*. Permitting child abuse "refers to the passive act of failing to prevent someone else—a third person—from inflicting the abuse." *Id*. ¶ 33. Thus, Defendant pled no contest to attempt to permit child endangerment by a third person. At a minimum, this level of attenuation subverts any conclusion that Defendant could have had the subjective intent to engage in the passive act of permitting child endangerment by the children's mother, whose conduct did not actually result in harm to their children. *See* UJI 14-2801 NMRA

17

(requiring the State to prove beyond a reasonable doubt that the defendant "intended to commit" the underlying felony).

{32} For the reasons stated above, we conclude that the mens rea for reckless child abuse, like the mens rea for other reckless conduct crimes, does not require any subjective intent. Since one cannot attempt to commit a felony which does not require subjective specific intent, we hold that in pleading no contest to attempt to permit negligent child abuse, Defendant pled to a nonexistent crime. Conviction for a nonexistent crime is a jurisdictional error which invalidates Defendant's conviction. For the same reason, we hold there is no lesser included offense of Section 30-6-1(D) of attempting to permit negligent child abuse when there is no harm to a child, as was described in the plea agreement and the district court's judgment and sentence.

**3.     The State's additional arguments are not well taken because reckless child abuse does not require subjective intent**

{33} The State also argues, "Attempt to permit negligent child abuse is a cognizable crime in New Mexico because a person need not intend a specific result inconsistent with recklessness when committing the offense." The State correctly points out that "the mens rea for reckless child abuse requires some level of conscious action above and beyond simple negligence" and asserts that "the intent required for attempt to commit reckless child abuse . . . was the intent to knowingly engage in the risky

18

behavior." The State avoids any discussion of the difference between specific intent and general intent crimes and our holding in *Jernigan* that one cannot attempt to commit a crime that does not require subjective specific intent. *See* 2006-NMSC-003, ¶ 18. Instead, it asserts that the mental state for reckless child abuse generally requires a person to "consciously disregard" a substantial and unjustifiable risk of harm to a child. The State seems to be asserting that this is a form of specific intent which validates a conviction for attempt to permit reckless child abuse. We disagree.

{34}    The State relies on our references to *consciously disregard* in *Consaul*, 2014-NMSC-030, ¶ 37, and *State v. Taylor* (*Taylor I*), 2021-NMSC-023, ¶ 21, 491 P.3d 737. Both cases are distinguishable and have been superseded on that point by our opinion in *Taylor II*, 2024-NMSC-011, which was issued shortly after briefing in this case was completed. We have observed that "[t]ypical definitions of recklessness require an actor to consciously disregard a substantial and unjustifiable risk of such a nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Consaul*, 2014-NMSC-030, ¶ 37. But we did not hold that *consciously disregard* was the appropriate mens rea for reckless child abuse in New Mexico. Instead, we addressed "only . . . the element of causation" when we analyzed the state's theory of criminally reckless conduct and determined that the state had

19

"[c]learly . . . failed to prove causation by anything approaching substantial evidence." *Id.* ¶¶ 44, 48.

{35} In *Taylor I*, the defendants sought release while their appeal was pending pursuant to NMSA 1978, Section 31-11-1(C) (1988). *Taylor I*, 2021-NMSC-023, ¶ 1. We reviewed "only whether their appeal raise[d] a substantial question of law or fact that *if* resolved in favor of the [d]efendants would likely result in reversal or an order for a new trial." *Id.* ¶ 9 (emphasis added) (internal quotation marks omitted) (quoting Section 31-11-1(C)(2)). As in *Consaul*, we did not resolve in *Taylor I* whether the mens rea for reckless child abuse required any subjective intent.

{36} In *Taylor II*, the defendants argued they could not be convicted of reckless child abuse for leaving very young children unattended and strapped into their car seats in a lethally hot vehicle if they acted accidentally, inadvertently, or unknowingly. 2024-NMSC-011, ¶ 23. The defendants argued that they could only be convicted of reckless child abuse if they were subjectively aware of what they had done. *Id.* This argument required explicit resolution of whether the mens rea for reckless child abuse requires proof of subjective intent. We rejected the defendants' argument, holding instead that determining whether a defendant recklessly caused or permitted a substantial or unjustifiable risk of serious harm to a child is a purely objective standard. *Id.* ¶¶ 23-24.

20

{37} Given our holding in *Taylor II*, the State's argument that Defendant's subjective intent is an element of reckless child abuse is mistaken. Since the mens rea standard for reckless child abuse is objectively determined, *Id.* ¶¶ 24, 26, reckless child abuse is not a specific intent crime, and a person cannot lawfully be charged with attempting to cause or permit reckless child abuse.

## III. CONCLUSION

{38} For the reasons stated above, we exercise our discretion to hear this case because it presents an issue of substantial public interest. We also conclude it raises a nonwaivable jurisdictional question that can be raised for the first time on appeal. Finally, we hold a defendant cannot enter a plea to a nonexistent crime and that *attempt* to cause or permit reckless child abuse is a nonexistent crime. Accordingly, we vacate the no contest plea entered by Defendant, reverse the judgment and conviction, and remand to the district court to dismiss the case.

{39} **IT IS SO ORDERED.**

_____

**BRIANA H. ZAMORA, Justice**

21

**WE CONCUR:**

_____
**DAVID K. THOMSON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**C. SHANNON BACON, Justice**

_____
**JULIE J. VARGAS, Justice**