This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                    **NO. 27,853**

**JOSEPH LUCERO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Silvia Cano-Garcia, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**GARCIA, Judge.**

Joseph Lucero (Defendant) was convicted of five counts of aggravated battery with a deadly weapon and firearm enhancement, NMSA 1978, § 30-3-5(A), © (1969); NMSA 1978, § 31-18-16 (1993); one count of shooting at or from a motor vehicle, NMSA 1978, § 30-3-8(B) (1993); and one count of conspiracy to commit shooting at or from a motor vehicle, § 30-3-8(B); NMSA 1978, § 30-28-2(A) (1979). On appeal, he claims that there was insufficient evidence to support his convictions, the district court erred in denying his motion to suppress, and he received ineffective assistance of counsel. We affirm.

**BACKGROUND**

Defendant's convictions are a result of his participation in a drive-by shooting at a children's birthday party in Anthony, New Mexico on May 19, 2005. Defendant was charged as the driver and owner of the car from which his co-defendant, Claudio Castaneda, fired a shotgun into a crowd of adults and children gathered for the party. The shotgun blast injured three adults and two children. One of the adults was blinded.

The State presented only circumstantial evidence to tie Defendant to the scene of the shooting. Sometime during the party as it was getting dark, Castaneda, his family, and Lorenzo Larrea drove to the party in Castaneda's girlfriend's white vehicle. Defendant was not with the group. After the group arrived at the party but

before they exited the girlfriend's vehicle, several of the party goers began throwing bottles at the vehicle. The Castaneda group left the party. About an hour before the shooting, a red Ford Probe was seen driving past the party. Later in the evening as the party was winding down, Castaneda returned to the party in a red Ford Probe. From the passenger seat, Castaneda fired a gun into the crowd gathered in front of the house.

At least one witness identified Castaneda as the passenger and shooter, but no one identified the driver of the car or identified Defendant as being involved in the incident. The State presented several witnesses who described the red car at the scene of the shooting. According to Julieta Lira, a red car slowly approached the house with its lights off, and two individuals were in the car. Rigo Hernandez, one of the adults injured, stated that two people were in "a little red Probe." Martin Soria, who was an assistant disc jockey at the party, stated that a red or maroon Ford Probe with its lights off approached the party. However, Isaac Loera, who was also injured, stated that the vehicle involved in the shooting was a truck or an SUV.

In addition, Larrea testified that Defendant drove a red Ford Probe in May 2005 and that he rode in the car on the day of the shooting while Defendant was driving. Castaneda's mother testified that on the night of the shooting between 10:30 and 11:30 p.m., Castaneda was at her house and a red car that was not normally at her house was parked outside her window. Castaneda's sister testified that when she

returned to her mother's house on the night of the shooting around 11:00 p.m., Castaneda and a male friend were at the house, and there was a red car blocking the driveway.

The first officer arrived at the scene of the shooting shortly after 11:00 p.m. He and other officers collected information and passed the information on to those involved in the investigation. Consequently, Investigator Chavez was on the look out for a red or maroon Ford Probe or Tempo, a Geo Storm, and a white pick-up as well as Castaneda. About three hours after the shooting, Investigators Chavez and Parra were en route to Castaneda's house when Investigator Chavez spotted a red or maroon car. Investigator Parra agreed that the car was in fact red. Investigator Chavez made a U-turn and then stopped the car when he confirmed it was a Ford Probe.

Investigator Chavez next obtained identification and ran an NCIC check on Defendant, who was driving, and his passenger, Castaneda. During this time, Castaneda became belligerent, and Investigator Parra handcuffed him. Investigator Chavez then detained Defendant after learning that Defendant was driving on a revoked license and seeing an open container of alcohol in the car. Defendant consented to a search of the car. The search revealed an unspent shotgun shell that matched the spent shotgun shell found less than a quarter of a mile from the scene of the shooting. A license plate search revealed that the car, a red Ford Probe, was

4

registered to Defendant.

Defendant and Castaneda ultimately were arrested and were tried together. The jury convicted Defendant of five counts of aggravated battery with a deadly weapon, one count of shooting at or from a motor vehicle, and one count of conspiracy to commit shooting at or from a motor vehicle. This appeal followed.

**DISCUSSION**

**Sufficiency of the Evidence**

On appeal, Defendant argues there was insufficient evidence to support his convictions because the State failed to "present any evidence that linked [him] to the shooting." Defendant challenges only the sufficiency of the evidence proving he was an accessory to the crimes, and he does not challenge the sufficiency of the evidence proving the underlying crimes were committed by Castaneda. "Under a sufficiency of evidence analysis, we must determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Reed*, 2005-NMSC-031, ¶ 14, 138 N.M. 365, 120 P.3d 447 (internal quotation marks and citation omitted). The evidence connecting Defendant to the scene is all circumstantial. However, a jury can rely on circumstantial evidence alone to support the convictions "so long as the [circumstantial] inference is logical and not based on surmise" or

5

conjecture. *State v. Baca*, 111 N.M. 270, 276, 804 P.2d 1089, 1095 (Ct. App. 1990); *see State v. Malouff*, 81 N.M. 619, 620, 471 P.2d 189, 190 (Ct. App. 1970) ("[W]hen circumstances alone are relied upon, they must point unerringly to defendants and be incompatible with and exclude every reasonable hypothesis other than guilt.").

Viewing the evidence with these principles in mind, we analyze whether the evidence is sufficient to establish that Defendant was the driver of the car used in the drive-by shooting and to link Defendant to the crimes. At trial, three people testified that the shots were fired from a red or maroon car, and two stated that the car was a Probe. The same red Ford Probe was seen driving by the party an hour before the shooting. Defendant owned a red Ford Probe that he was driving during the day and the night of the shooting. Castaneda and a male friend were at Castaneda's house around the time of the shooting, and there was a red car in the driveway of the house. Three hours after the shooting, Defendant was driving his red Ford Probe and Castaneda was the passenger when Investigators Chavez and Parra stopped Defendant while en route to Castaneda's house. There was a yellow shotgun casing on the floorboard of Defendant's car that matched the casing found near the scene. There was no evidence presented that on the night of the shooting Defendant was not the owner of his red Ford Probe, that he had loaned the car to someone, or that someone had driven his car with or without permission.

The logical inference is that Defendant was driving his red Ford Probe during the drive-by shooting. The circumstantial evidence was sufficient to place Defendant and his red Ford Probe at the scene of the crime. Defendant did not present conflicting evidence regarding the driver of Defendant's Ford Probe to contradict the reasonable inferences presented by the State. Therefore, "view[ing] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences[,] and resolving all conflicts in the evidence in favor of the verdict[,]" we conclude that the inferences arising from the evidence establish only one reasonable hypothesis regarding the driver of Defendant's red Ford Probe at the scene of the drive-by shooting. *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176; *Malouff*, 81 N.M. at 620, 471 P.2d at 190.

Defendant relies upon the circumstantial nature or other non-driving aspects of the evidence that point away from his involvement in the shooting: no one was able to identify Defendant as the driver; Larrea's testimony that when he arrived at Castaneda's house during the late evening, Defendant was asleep, snoring on the couch; the shooting was the result of a conflict between the rival gangs, and Defendant was not a member of the two gangs; and the vehicle at the shooting was also described by one witness as a truck or an SUV. In addition, Defendant argues that Castaneda's sister stated that she met Castaneda's male friend on the night of the shooting and that

7

if the person had been Defendant, she would have identified him in court. Although circumstantial evidence was presented to weaken the State's theory that Defendant was the driver of his red Ford Probe and was involved in the shooting, we do not assess the credibility of the witnesses or reweigh the evidence. *See State v. McGhee*, 103 N.M. 100, 103, 703 P.2d 877, 880 (1985) ("The determination of the weight and effect of the evidence, including all reasonable inferences to be drawn from both the direct and circumstantial evidence is a matter reserved for determination by the trier of fact."). No evidence was presented that anyone else drove Defendant's Ford Probe on the night of the drive-by shooting. We will not speculate regarding the reasons for the variations in testimony or the credibility of witnesses. Instead, we view the inferences to be drawn from the evidence in the light most favorable to upholding the verdict. We conclude that sufficient evidence existed to uphold the jury's verdict.

**Reasonableness of the Stop**

Defendant next contends that the district court erred in denying his motion to suppress the initial stop. He argues the initial stop was unreasonable because the officer had received conflicting information regarding the description of the car in question, because three hours had passed since the shooting, and because the officer was relying on merely a hunch when the officer initiated the stop. Our review of a motion to suppress is a mixed question of fact and law. *State v. Williams*,

8

2006-NMCA-062, ¶ 6, 139 N.M. 578, 136 P.3d 579. Since the facts regarding the stop are undisputed, we review de novo the totality of the circumstances to determine whether reasonable suspicion existed to justify Defendant's stop. *See id.*; *State v. Robbs*, 2006-NMCA-061, ¶ 9, 139 N.M. 569, 136 P.3d 570 ("Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified.").

"An investigatory stop is based on reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Taylor*, 1999-NMCA-022, ¶ 7, 126 N.M. 569, 973 P.2d 246 (filed 1998) (internal quotation marks and citation omitted); *see State v. Rivas*, 2007-NMCA-020, ¶ 7, 141 N.M. 87, 150 P.3d 1037 (filed 2006) ("A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law. Unsupported intuition and inarticulate hunches are not sufficient." (internal quotation marks and citation omitted)). Investigator Chavez had reasonable suspicion to stop Defendant's vehicle. Investigator Chavez had received information from fellow officers that a red or maroon Ford Probe was possibly involved in a drive-by shooting. Investigator Chavez spotted the car while he was en route to Castaneda's house to

9

continue his investigation regarding Castaneda's involvement in the shooting. After first seeing the car, he confirmed with his partner that the car was in fact red. Before stopping the car, he confirmed that the car was a Ford Probe. The stop occurred within hours after the shooting and while Investigator Chavez was actively investigating the shooting and Castaneda's involvement. These facts are sufficient to establish reasonable suspicion and justify the investigatory stop of Defendant's vehicle. *See State v. De Jesus-Santibanez*, 119 N.M. 578, 581, 893 P.2d 474, 477 (Ct. App. 1995) (holding that the officer had reasonable suspicion to perform an investigatory stop because the type of vehicle, the time and route of travel, and origin of the license plate all matched information in the BOLO); *State v. Lovato*, 112 N.M. 517, 519-20, 817 P.2d 251, 253-54 (Ct. App. 1991) (holding that the officer had reasonable suspicion to stop a car matching the "attempt-to-locate" car description and located in the area of the drive-by shooting); *see also State v. Vandenberg*, 2003-NMSC-030, ¶ 38, 134 N.M. 566, 81 P.3d 19 (recognizing that as a general proposition, an officer may reasonably rely upon the information obtained in a BOLO to provide reasonable suspicion to make an investigatory stop). Here, Defendant's vehicle matched the description identified during the discussions between the investigating officers and was in the immediate vicinity of Castaneda's home, the suspected shooter at the time of the stop. We affirm the district court.

**Ineffective Assistance of Counsel**

Lastly, Defendant argues that he received ineffective assistance of counsel because his counsel failed to argue zealously for him and failed to file a motion to sever the trial. We review claims of ineffective assistance of counsel de novo. *State v. Boergadine*, 2005-NMCA-028, ¶ 33, 137 N.M. 92, 107 P.3d 532. We are required to begin with the presumption that counsel was competent. *Id.* To establish ineffective assistance of counsel, a defendant has the burden to prove (1) that his counsel's performance fell below that of a reasonably competent attorney and (2) that he was prejudiced by his counsel's deficient performance. *Id.* "Defense counsel's performance is deficient if counsel's representation fell below an objective standard of reasonableness." *State v. Roybal*, 2002-NMSC-027, ¶ 21, 132 N.M. 657, 54 P.3d 61 (internal quotation marks and citations omitted). We do not find ineffective assistance of counsel if there is a plausible, rational trial strategy or tactic to explain counsel's conduct. *See State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289; *State v. Richardson*, 114 N.M. 725, 729, 845 P.2d 819, 823 (Ct. App. 1992). We note that Defendant failed to specify the ways in which his counsel did not zealously argue his case. Therefore, we do not address this portion of Defendant's argument. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

Instead, Defendant argues that no trial strategy could have justified his counsel's failure to file a motion to sever his case from Castaneda's. Although Defendant's counsel did not make such a motion, Castaneda's counsel did move to sever and the motion was denied. It is not our place on appeal to second guess trial strategies. *State v. Hester*, 1999-NMSC-020, ¶ 11, 127 N.M. 218, 979 P.2d 729. Defense counsel could have thought that Defendant had a stronger defense if his trial remained joined with Castaneda's. In addition, it is not certain the district court would have granted Defendant's motion to sever given that the court had discretion to grant the motion. Rule 5-203© NMRA; *see State v. Gonzales*, 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992) ("To prevail on his ineffective assistance of counsel claim, [the] defendant must first demonstrate that had his counsel moved for severance, the motion would have been granted."). Joinder was presumed proper in this case since Defendant and Castaneda were charged based on their combined participation in the same event, the drive-by shooting. *See* Rule 5-203(B)(2), (3) (explaining when joinder is allowed). Furthermore, Defendant never argued that the court's denial of Castaneda's motion to sever prior to the start of the trial was error. Finally, we note that the review of tactical trial decisions has been determined to be better during habeas corpus proceedings where there can be an evidentiary hearing involving testimony from trial counsel. *Bernal*, 2006-NMSC-050, ¶ 35.

Under the circumstances of this case, we conclude that Defendant failed to demonstrate that his counsel's performance regarding severance fell below that of a reasonably competent attorney. Accordingly, we reject Defendant's claims of ineffective assistance of counsel.

**CONCLUSION**

We affirm Defendant's convictions for the foregoing reasons.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**JAMES J. WECHSLER, Judge**