This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                    **NO. 31,500**

**LUIS TRUJILLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Eugenio S. Mathis, District Judge**

The Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant


Gary K. King, Attorney General
Francine Ann Baca-Chavez, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**BOSSON, Justice.**

Defendant Luis Trujillo was convicted by a jury of one count of first-degree murder in violation of NMSA 1978, Section 30-2-1(A) (1994); one count of kidnapping in violation of NMSA 1978, Section 30-4-1 (2003); one count of aggravated arson in violation of NMSA 1978, Section 30-17-6 (1963); and three counts of conspiracy in violation of NMSA 1978, Section 30-28-2 (1979). Defendant was sentenced to life imprisonment for first-degree murder; he was given a fifteen-year concurrent sentence for conspiracy to commit first-degree murder, a nine-year concurrent sentence for aggravated arson, a three-year consecutive sentence for conspiracy to commit aggravated arson, and a nine-year concurrent sentence for conspiracy to commit kidnapping. The district court vacated Defendant's kidnapping conviction on the grounds that it was subsumed within the first-degree murder conviction.

On direct appeal, Defendant raises numerous issues. He argues (1) there is insufficient evidence to sustain a conviction for aggravated arson, (2) the multiple conspiracy convictions violate principles of double jeopardy, (3) his trial counsel was

constitutionally ineffective when failing to pursue a claim of juror bias, (4) the district court abused its discretion in denying his motion for a mistrial based on prejudicial security outside the courthouse, and (5) there is insufficient evidence to support any of the convictions due to inherent inconsistencies in the State's witnesses' testimony. We have jurisdiction pursuant to Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A) NMRA. *See State v. Trujillo*, 2002-NMSC-005, ¶ 8, 131 N.M. 709, 42 P.3d 814 ("Our mandatory appellate jurisdiction is constitutional and is limited to appeals from a judgment of the district court imposing a sentence of death or life imprisonment." (internal quotation marks and citation omitted)).

**BACKGROUND**

Defendant's convictions arise out of a particularly grisly homicide that occurred in Taos County on the night of September 6-7, 2003. The basic facts are as follows. Defendant, along with several co-conspirators, physically assaulted Victim, Juan Alcantar, in the home of a mutual acquaintance. Following the attack, Lawrence Gallegos stood guard over the bound Victim until Defendant and Steve Tollardo

returned to the home with Michelle Martinez, who carried with her a lethal dose of heroin. Upon Martinez's arrival, Defendant and his co-conspirators injected the Victim with heroin, placed the Victim into his vehicle, and drove that vehicle to a remote church parking lot. Once there, Martinez and Gallegos attempted to strangle the Victim, suffocate him, and break his neck before Defendant and Tollardo arrived and the group drove off together in Defendant's car. At some point later that evening, Defendant, Gallegos, and Tollardo returned to the church parking lot where they proceeded to douse the Victim with lantern fuel and set him and his vehicle on fire. At trial, the State's pathologist opined that the Victim had died as a result of drug intoxication with inhalation of smoke and soot as a significant contributing condition. The pathologist further testified that the presence of soot in the Victim's lungs indicated he was still alive when the fire began.

A more detailed description of the factual history of this crime can be found in our companion opinion, *State v. Gallegos*, 2011-NMSC-___, ¶¶ 5-14, ___ N.M. ___, ___ P.3d ___ (No. 31,204, filed June 15, 2011). We note that Defendant and Gallegos were tried separately for their roles in the killing.

**Sufficient Evidence Supports the First-Degree Murder Conviction**

Defendant has not contested the propriety of his conviction for "willful, deliberate and premeditated" first-degree murder. *See* § 30-2-1(A)(1). However, because our appellate jurisdiction is predicated upon this conviction, we feel obliged to briefly address this issue. After reviewing the trial record, we find that Defendant's premeditated first-degree murder conviction is supported by substantial evidence.

In applying our standard of review, we first "'view the evidence in the light most favorable to the state, resolving all conflicts . . . and indulging all permissible inferences . . . in favor of the verdict.'" *State v. Graham*, 2005-NMSC-004, ¶ 6, 137 N.M. 197, 109 P.3d 285 (quoting *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988)). We then "'determine[] whether the evidence, [when] *viewed in this manner,* could justify a finding by *any* rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt.'" *Id.* (quoting *State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994)).

The trial record supports the following facts. Defendant took part in the unprovoked attack upon the Victim in Anaya's home, which occurred after a series of phone calls were placed between the home and Ivan Romero's cell phone.

5

Defendant was present in Elias Romero's shack when Elias Romero provided Martinez with the heroin filled syringe and instructed her, along with Defendant and Tollardo, to return to Anaya's home and kill the Victim. Defendant drove Martinez and Tollardo back to Anaya's home, and Defendant was in the home when Martinez injected the Victim with heroin. Following the heroin injection, Defendant drove with Tollardo to the church parking lot to meet Martinez and Gallegos, who had themselves driven to the same location in the Victim's vehicle. Defendant and the entire group later drove back to Elias Romero's shack, and he was present in the shack when the plan to burn the Victim was formulated. Defendant also took part in burning the Victim. When the group returned to the shack after setting the Victim alight, Defendant told his fellow co-conspirators that the Victim would have died anyway, because Defendant had family in Questa, New Mexico, where the Victim lived.

In light of these and other facts found in the evidentiary record, we are of the firm opinion that Defendant's conviction for willful, deliberate first-degree murder is supported by substantial evidence.

**Substantial Evidence Supports the Aggravated Arson Conviction**

Defendant argues that he could not have been properly convicted of aggravated arson because the State failed to establish that he knew the Victim was alive at the time of the fire, and there is insufficient evidence showing that Defendant intended to grievously injure or kill the Victim when starting the fire. Defendant contends that the aggravated arson statute contains a dual *mens rea* requirement. According to Defendant, the State must not only prove that Defendant wilfully or maliciously set the Victim's car on fire, but that Defendant started the fire with an intent to cause great bodily injury. *See* § 30-17-6 ("Aggravated arson consists of the willful or malicious damaging by any explosive substance or the willful or malicious setting fire to any bridge, aircraft, watercraft, vehicle, pipeline, utility line, communication line or structure, railway structure, private or public building, dwelling or other structure, causing a person great bodily harm.").

Like the defendant in *Gallegos*, Defendant claims that, absent evidence he knew the Victim was still alive, the State failed to prove beyond a reasonable doubt Defendant intended to do anything other than destroy evidence when starting the

fire. As in *Gallegos*, we reject Defendant's claim. *See Gallegos*, 2011-NMSC-___, ¶ 22.

Contrary to Defendant's assertion, we are not required to rule on his statutory argument in order to uphold his conviction for aggravated arson. Even if we were to assume for the sake of argument that the aggravated arson statute requires an additional element, i.e., an intent to cause great bodily harm, the record contains sufficient evidence that Defendant possessed such an intent when setting the Victim's vehicle on fire. For instance, the pathologist testified that the Victim was in fact alive when the fire began. In addition, Martinez testified that after injecting the Victim with heroin, she, along with Defendant, Gallegos, and Tollardo, sat around Anaya's home waiting for the heroin to take effect. However, the heroin did not work as planned, and when the Victim appeared to be snapping out of the induced overdose, Martinez instructed Defendant and the others not to move the Victim, thinking this would aid the effect of the drug. When the Victim still did not die, the group tried calling Ivan Romero's cell phone at least six times for further instructions, but were unable to get through to him. Martinez also testified that she and Gallegos, once in the church parking lot, continued trying to kill the Victim after hearing him breathe and make other noises. Defendant,

Gallegos, and Tollardo later returned to the parking lot to burn the Victim and the Victim's vehicle. Thus, the evidence suggests that when the arson occurred, Defendant likely was aware that the Victim remained alive.

Because the facts at trial support a finding by a rational jury that Defendant intended to cause great bodily injury beyond a reasonable doubt, we will not address his statutory based argument.

**Defendant's Multiple Conspiracy Convictions Violate Double Jeopardy**

Defendant next contends that his three conspiracy convictions violate principles of double jeopardy. We addressed this precise issue in *Gallegos*. *See Gallegos*, 2011-NMSC-___, ¶¶ 27-64. Like the instant case, the defendant in *Gallegos* was convicted of (1) conspiracy to commit murder, (2) conspiracy to commit kidnapping, and (3) conspiracy to commit first-degree murder. *Id.* ¶ 2. In *Gallegos*, after reviewing relevant legal authorities, we determined that the Legislature had not authorized multiple conspiracy convictions under circumstances identical to this case. *Id.* ¶ 64. We therefore ruled in *Gallegos* that the three conspiracy convictions violated Gallegos' double jeopardy rights. *Id.* We remanded to the district court, directing that it vacate two out of the three conspiracy convictions and resentence Gallegos on the single remaining conspiracy

9

at the level of the "highest crime conspired to be committed," which was a conspiracy to commit first-degree murder. *Id.*; *see also* § 30-28-2(B).

Here, Defendant belonged to the same conspiratorial combination as *Gallegos*, and nothing in the record distinguishes the facts of Defendant's case to support a contrary outcome. Accordingly, we remand this case to the district court to vacate Defendant's convictions for conspiracy to commit kidnapping and conspiracy to commit aggravated arson and to resentence him in a manner consistent with our *Gallegos* opinion.

**Defendant's Ineffective Assistance of Counsel Claim Must be Raised Through Habeas Corpus**

Defendant contends that the performance of his trial counsel was constitutionally deficient. Specifically, Defendant claims that his counsel failed to develop and present to the district court a coherent theory of juror bias. The standard of review for ineffective assistance of counsel is de novo. *State v. Boergadine*, 2005-NMCA-028, ¶ 33, 137 N.M. 92, 107 P.3d 532.

> To prevail on this claim, "[D]efendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (citing *Strickland v. Washington*, 466 U.S. 668, 690, 692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "Although the assistance provided by trial counsel is presumptively adequate, an attorney's conduct must not fall below that of a reasonably competent

10

attorney." *State v. Holly*, 2009-NMSC-004, ¶ 36, 145 N.M. 513, 201 P.3d 844. A defendant must demonstrate that counsel's errors were so serious that the result of the proceeding would have been different. *State v. Schoonmaker*, 2008-NMSC-010, ¶ 32, 143 N.M. 373, 176 P.3d 1105.

*State v. Gallegos*, 2009-NMSC-017, ¶ 34, 146 N.M. 88, 206 P.3d 993.

After the jury returned its verdict, Defendant's trial counsel filed a post-trial motion for new trial and renewed motion for mistrial. In that motion, Defendant's counsel argued that two jurors failed to disclose their prior knowledge of Defendant and his family. No other information was provided. On appeal, Defendant now argues that Defendant's family and the families of the two jurors had been involved in a dispute, and that trial counsel had failed to adequately apprise the district court about the nature of that dispute and the potential for juror bias. The source of this new allegation is unclear; it is not found in the record.

Other than Defendant's unsupported claim about a familial dispute, he has not cited to anything in the record that would support a claim of deficient performance by his trial counsel related to potential juror bias. Where the record on appeal is plainly insufficient to establish a prima facie case of ineffective assistance of counsel, we are required to reject Defendant's claim while at the same time directing him to the alternative remedy of a habeas corpus petition in which

11

he may have an opportunity to develop a sufficient factual record to support his claim. *See State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 ("This Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel.").

**The District Court Did Not Abuse its Discretion in Denying Defendant's Motion for a Mistrial**

Relying on *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), Defendant argues that he was prejudiced by the extreme security presence outside the Eight Judicial District courthouse in Taos during his trial. Defendant claims that the additional security, which included a SWAT team van parked outside the courthouse, made it impossible for him to secure a fair trial. We must reject Defendant's claim, because Defendant has failed to cite any law in support of this claim, and his allegations of prejudice are conclusory at best. After reviewing the record, we cannot find that the district court abused its discretion when denying Defendant's motion for a mistrial. *See State v. O'Neal*, 2008-NMCA-022, ¶ 28, 143 N.M. 437, 176 P.3d 1169 (noting that appellate courts review the denial of such motions for an abuse of discretion).

**The Testimony of the State's Witnesses Were Not Inherently Improbable**

Relying again on *Franklin* and *Boyer*, Defendant asserts that none of his convictions should be sustained because the State's witnesses are inherently unbelievable, particularly Martinez. We rejected a similar claim in *Gallegos*, noting that "any potential inconsistencies in Martinez's testimony or questions regarding her veracity do not justify reversal, since weighing the evidence, like credibility determinations, falls within the exclusive province of the jury." 2011-NMSC-___, ¶ 72 (internal quotation marks and citation omitted). We reject Defendant's argument on the same grounds we announced in *Gallegos*.

**CONCLUSION**

We affirm in part, reverse in part, and remand to the district court for further proceedings.

**IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

14

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

15